Cynthia Kuser Herbst v. Commissioner.
Herbst v. Commissioner
Docket No. 109224.
United States Tax Court
1943 Tax Ct. Memo LEXIS 230; 2 T.C.M. (CCH) 361; T.C.M. (RIA) 43309; June 26, 1943
*230 Aaron Holman, Esq., 25 Broadway, New York City, for the petitioner. Jonas M. Smith, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This proceeding involves the redetermination of deficiencies in income taxes for 1937 and 1938 in the respective amounts of $5,797.96 and $2,372.81. They were determined prior to the enactment on October 21, 1942, of section 121 of the Revenue Act of 1942, amending section 23 (a) of the Internal Revenue Code by a new provision, reading as follows: (a) EXPENSES. - * * * * *
(2) NON-TRADE OR NON-BUSINESS EXPENSES. - In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenace of property held for the production of income. The amendment is retroactive to the taxable years. Section 121 (e) of the Revenue Act of 1942. Issues relating to depreciation and a loss deduction were abandoned by the petitioner at the hearing. The remaining issues relate to amounts alleged to be deductible under section 23 (a) (2), supra. Petitioner's books were kept, and her returns for *231 the taxable years were filed on the cash basis with the collector at Newark, New Jersey. For purposes of clarity we take up the several situations here involved separately, finding facts and rendering opinions in each seriatim. I Findings of Fact On May 25, 1932, petitioner transferred to the Central Hanover Bank & Trust Co., hereinafter referred to as the Hanover Co., in trust, various stocks, bonds and mortgages and other property, to be received from a trustee under the will of John F. Dryden, with directions to collect the income therefrom and pay the net amount thereof quarterly to the grantor. The trustee was empowered to sell the corpus and invest the proceeds in other securities. Upon the termination of the trust on June 1, 1937, the trust property was to be transferred to the grantor. The trustee was to receive for its services 2 per cent of the income collected and 1/2 of 1 per cent of the corpus of the trust fund. In December 1936, petitioner notified the trustee of her desire to revoke the trust in so far as it related to one mortgage covering property located at 516 Central Avenue, Jersey City, New Jersey, and a parcel of land known as 521 Ocean Avenue, Jersey City, *232 New Jersey, which had been acquired by the trustee through foreclosure of a mortgage in the trust. She employed counsel to draft a modification of the trust and prepare the necessary instruments for the reconveyance of the mortgage and real estate to her. In 1937 petitioner paid to counsel for his services in connection with the matter fees aggregating $750. The mortgage received by the petitioner from the Hanover Co. had been held by another trust company as trustee of a trust of which petitioner was the beneficiary. It was ascertained that such trust company had purchased the mortgage from itself. Counsel advised petitioner that in his opinion she had a cause of action against such trust company for fraud on account of the transaction. Subsequent negotiations conducted by counsel resulted in a settlement of the matter in consideration of a payment in 1937 of $10,000 by the trust company to petitioner. Counsel retained $750 as a fee for his services. The mortgage was assigned by the petitioner to the trust company as a part of the settlement. Opinion So much of the fee of $750 paid to counsel for withdrawing the mortgage and real property from the trust is an expenditure to be *233 taken into account in determining loss or gain on the disposition of the asset, not an ordinary and necessary expense. Victoria Paper Mills Co., 32 B.T.A. 666, and Mary W. T. Connally, 32 B.T.A. 920. The remainder of this fee relates to the parcel of real estate also withdrawn from the trust. We do not know what disposition was made of the real property, or, if retained, whether it was held for income-producing purposes. Under the circumstances, no part of the fee may be allocated to the real estate. The other fee of $750, paid to counsel for negotiating a settlement with a trust company in New Jersey on account of alleged fraudulent action in purchasing a mortgage from itself for a trust of which petitioner was the beneficiary, in connection with which settlement the petitioner conveyed the mortgage upon receipt of $10,000, is also a capital expenditure to be used in computing loss or gain on such disposition of the asset, and, accordingly, is not an item deductible under section 23 (a) (2), supra. The respondent is sustained on this issue. II Findings of Fact In 1936 petitioner employed counsel to prepare an *234 assignment of her interest in the trust of which the Hanover Co. was trustee as security for a loan of $100,000 made to her by the Hanover Co. Petitioner engaged the same counsel to represent her in connection with the termination on June 1, 1937, of the trust. The assets of the trust at that time included stocks, bonds, 19 mortgages, and 8 parcels of real estate which had been acquired in foreclosures of mortgages, all of a value in excess of $1,000,000. Counsel examined the accounting of the trustee, consisting of about 100 pages, verified the computation of trustee's commissions, prepared a release covering the delivery of the assets to the beneficiary, assignments of the mortgage and deeds for the real estate and otherwise attended to the closing of the trust estate, including the recordation of various instruments and delivery of some of the assets to the Reo Real Estate Service Corporation, which had been engaged by petitioner to handle the real estate for her, and the cancellation of the loan of $100,000. Counsel also arranged for the opening of a special investment account at the Bank of the Manhattan Co. for the securities; prepared a custodian agreement for the account and *235 had the securities delivered to the bank. The fee of counsel for his services, amounting to $1,000, plus $75.83 for disbursements, was paid by petitioner on October 16, 1937. Of the amount of the fee $750 was for the preparation of papers covering the termination of the trust; $100 for services in connection with the loan; $100 for the delivery of the real estate and mortgages to the Reo Real Estate Service Corporation and $50 for the preparation of the custodian agreement. The disbursements include items aggregating $54.47 for recording fees in New Jersey, $7.00 for notarial certificates, $7.80 for documentary stamps, and amounts for car fare, overtime for a stenographer, postage and telephone tolls. Opinion All of the fees, except the item of $100 charged for preparing the loan papers, were paid for the production of income and are deductible. The evidence fails to prove that the loan had any connection with an activity of petitioner within the meaning of the statute and is not deductible. Of the disbursements of $75.83, the amounts paid for recording fees, notarial certificates and documentary stamps, totaling $69.27, were connected with the transfer of the assets for production *236 of income and are deductible. Some part of the remaining amount of $6.56 was probably paid for such a purpose, but we lack any basis for making an allocation. Accordingly, no part of the items agregating $6.56 has been shown to be deductible. III Findings of Fact On June 7, 1937, petitioner established, subject to a right of termination at any time on 15 days notice, a special investment account with the Bank of the Manhattan Co., and deposited therein various securities with directions to collect the income therefrom for her account. The Bank was also engaged to act as investment counsel. In serving in such capacity, the Bank was requested to review the account and to keep it under review, making such recommendations to petitioner from time to time as it considered advisable for the sale of securities and investments. The Bank was to receive for its custodian and investment counsel services at the end of each year after the date of the establishment of the account an annual fee equal to 1/2 of 1 per cent of the market value of securities. For the calendar year 1937 petitioner reported $15,357.29 as taxable income received from the account and claimed no deduction therefrom for *237 fees for servicing the account. During the calendar year 1938 the Bank collected under the account dividends of $14,123.48 and $2,161.47 of tax-exempt interest. On June 8 and in September and December 1938, petitioner paid fees aggregating $4,250 to the bank for services rendered by it in servicing the account. The dividends, less the fee, were reported as taxable income in the return filed by petitioner for 1938. In his determination of the deficiency respondent made no adjustment in the amount of income reported as taxable and disallowed the fee as a deduction. Opinion It is evident the purpose of the account was production of income. The assets deposited for that object produced income, taxable and tax exempt, and for its services in connection therewith the bank was paid a fee of $4,250. Upon brief, respondent contends that the income was produced by three accounts, including the one maintained for petitioner, and that since no allocation has been made, we are without a basis for allowing any part of the fee as a deduction. Respondent also argues that the fee is unreasonable. The respondent relies upon a statement rendered by the bank to petitioner of the income and disbursements *238 of three accounts listed as follows: Cynthia Kuser Herbst Special Investment Account Herbst-Culbertson Escrow Herbst-Morehead Escrow The petitioner reported all of the dividends as taxable to her, listing as nontaxable the tax-exempt interest, and deducted the fee of $4,250 in arriving at the amount of taxable "Net income from Bank of Manhattan Co." Respondent in determining the deficiency, included the dividends in taxable income and disallowed all of the fee as a deduction without giving a reason for his action. Respondent's counsel in withdrawing his objection to the introduction of the bank's statement into the record as an exhibit of petitioner, remarked that the exhibit was "a statement of the account with reference to Cynthia Kuser Herbst for 1938 with the Bank of Manhattan Co." The "escrow" accounts appear to be nothing more than parts of the only investment account opened by petitioner at the bank. In any event, the facts do not justify a finding that the fee is not attributable to services performed under petitioner's account, as reported by her and accepted by respondent in his determination of the deficiency. The terms of the agreement of June 7, 1937, under which *239 the account was opened, entitled the bank to an annual fee of one-half of 1 per cent of the market value of the securities in the account at the date of payment. The first payment of the fee was not payable until June 7, 1938. The bank received a fee of $3,000 on June 8, $750 on September 7, and $500 on December 7, all in 1938. No fee seems to have been paid in 1937, when petitioner reported taxable income of $15,357.29 from the account, as she did not deduct a fee in her return. Under the circumstances, it seems evident that the fee paid in 1938 includes an amount for services rendered in 1937 after the opening of the account. Considering the nature of the account and the amount involved, we do not think the fee was unreasonable, and so hold. The benefits of section 23 (a) (2) do not apply to tax-exempt interest. Section 24 (a) (5) of the Internal Revenue Code, [1] as amended by section 121 (b) of the Revenue Act of 1942, and made retroactive to prior acts by section 121 (e); Report No. 2333, Committee on Ways and Means, 75; Report No. 1631, Committee on Finance, 88. Of the income of $16,284.95 derived by petitioner from the account in 1938, $2,161.47 was tax-exempt interest. Accordingly, *240 2,161.47 / 16,284.95ths or $564.09 of the fee of $4,250 is allowed as a deduction. The remainder of $3,685.91 is deductible under the provisions of section 23 (a) (2), supra. IV Findings of Fact Petitioner was life beneficiary of the net income of a trust under the will of Susie Dryden Kuser, known as the Cynthia Dryden Kuser Trust, which was being administered under jurisdiction of the Orphans' Court of Somerset County, New Jersey. In its approval of an accounting made by the Trust Co. of New Jersey, trustees of the trust, the court, on December 17, 1937, entered an order allowing a counsel fee of $1,000 to counsel for the accountants, the allowance to be charged to the income of the trust. The fee was paid by the trustee on January 3, 1938. The fiduciary return filed by the trustee of the trust for *241 1938 did not contain a deduction for the fee. The amount of $30,442.61 shown in the fiduciary return as distributable to petitioner was reported by the petitioner in her income tax return for 1938. Opinion Petitioner contends that the amount of her income from the trust is overstated by $1,000 on account of the failure of the trustee to deduct in computing the net income of the trust, the counsel fee of $1,000 allowed by the court with a direction that it be charged to the income of the trust. Under the circumstances the petitioner overstated her distributable share of net income of the trust by $1,000. On this issue we hold for the petitioner. Mary Helen Cadwalader, 27 B.T.A. 1078; see also Augusta Bliss Reese, 29 B.T.A. 565; Bessie B. Hopkinson, 42 B.T.A. 580; affd., 126 Fed. (2d) 406. V Findings of Fact Petitioner filed a claim for refund of $7,762.77 of the income tax of $9,610.20 paid for 1935. The claim was allowed and in 1938 paid in the amount of $4,877.14, plus interest of $368.84. The interest was reported by petitioner in her 1938 return. In 1938 *242 petitioner paid counsel a fee of $1,450 for representing her in connection with the refund claim. Opinion Petitioner had the burden of proving that the fee was paid for the production or collection of income or for the management, conservation, or maintenance of property held for the production of income within the meaning of section 121, Revenue Act of 1942. The interest constitutes taxable income and so much of the fee as was paid in connection therewith is deductible as an ordinary and necessary expense for the collection of income. The Commissioner's regulations recognizes such an expense as a deductible item. Regulations 103, section 19.23 (a)-15. The refund was claimed upon the ground that stock of a corporation, acquired by investments aggregating $12,000, and loans in the amount of $16,675 made to the same corporation became worthless in 1935 and were deductible from gross income. No evidence was offered to show that the stock or the evidence of the loans were held for the production of income. We may not assume that they were so held. The Commissioner allowed only part of the amount of the alleged overpayment. The adjustments made by him in computing the refund are not *243 before us, and we do not know how he determined the overpayment. Thus we lack the necessary facts from which to make a finding that the refund of tax was associated in any manner with property which had produced income or had been held for the production of income, even if we assume that the refund matter comes within the purview of conservation, management or maintenance of such property. Since, as above held, so much of the fee as is allocable to the interest is deductible. Accordingly, 368.84 / 5,245.98ths or $101.95 of the fee is allowed and the remainder is disallowed as a deduction. VI Findings of Fact In 1938 petitioner paid counsel a fee of $200 for representing her in connection with a proposed deficiency of $2,538.34 in income tax for 1934. The negotiations resulted in a reduction of the amount of the proposed deficiency. Opinion Under this issue, as under the preceding one, petitioner's burden was to show that the fee was paid as an expense within the meaning of the statute. The proposed deficiency resulted from additional income from the trust referred to in issue I, disallowance of a deduction for salary of petitioner's secretary and an error of $1.00 in capital *244 gain. The amount of the proposed deficiency was subsequently reduced. We do not know what adjustments were made by the Commissioner in his final determination and, accordingly, can not determine to what extent, if at all, the expense is deductible under the applicable statute. The evidence is insufficient to permit the allowance of any part of the fee as a deduction. VII Findings of Fact In 1938 petitioner paid counsel a fee of $100 for legal fees and assistance rendered to her in connection with her interests in trusts in New Jersey. Opinion The facts applicable to the issue are insufficient to establish a right to a deduction for the fee. On this issue we sustain the respondent. VIII Findings of Fact Petitioner, a resident of New Jersey, aged 27 in 1937, inherited a large sum of money from her parents. She had had no business education, training or experience. She never made any effort to attend to all of her business affairs. During the taxable years petitioner paid to Oscar B. Creamer, her secretary, a salary of $3,600 per annum. His duties, in general, consisted of attending to petitioner's financial affairs. The duties included seeing that dividends were received and *245 that stock transactions were properly handled, and supervision of income-producing real property, including real property and mortgages of a value of about $125,000, which were under the direct management of the Reo Real Estate Service Corporation. Creamer also had direct charge of four mortgages of a total value of $30,000. In 1937 and 1938, he attended many conferences held in connection with the renewal of a long-term lease held by the Twentieth Century Fox Film Co. on property of an original cost of $465,000, and the construction by petitioner in 1938 of a building on adjoining property at a cost of $125,000 for rental to the same lessee. During the taxable years the Reo Real Estate Service Corporation of Newark, New Jersey, had direct management of about 10 real properties and 17 mortgages of petitioner, and received a specified fee for its services. The properties included two small apartment houses. The Reo Real Estate Service Corporation always consulted Creamer whenever it had occasion to communicate with petitioner in connection with the management of the properties. Creamer generally passed upon the questions presented to him without consulting petitioner. He went to the *246 office of the Reo Real Estate Service Corporation at least 25 times per year and frequently communicated with it by letter and telephone in regard to the properties. This contact was necessary under the limited authority given the Reo Real Estate Service Corporation to make sales, repairs, foreclosures and extensions of mortgages, fix rents and other matters relating to the management of the properties. In 1937 and 1938 there were a number of dispossessions of tenants and extensions of the mortgages. The real estate company never communicated directly with petitioner in regard to these matters. In addition to these matters, Creamer represented petitioner in connection with her investment account at the Bank of Manhattan Co. and trust agreements with the Hanover Company and the Trust Company of New Jersey. He conferred with them from time to time in regard to sales of securities. Petitioner generally followed his advice in regard to such matters. Creamer was secretary to petitioner's father from 1909 until his death in 1929 and to her mother from that time until her death in 1932. He attended to financial matters for petitioner's mother the same as he had for petitioner's father. *247 During the taxable years Creamer received a salary of $1,500 or $1,800 per annum from petitioner's brother. The salary was commensurate with the volume of work done. Creamer devoted about one-half of a day a week looking after affairs of petitioner's brother's wife. Creamer maintained an office at his home. About 10 per cent of the time he devoted to petitioner's affairs related to her personal activities. The gross and net income derived in 1937 and 1938 from rental of property managed by the Reo Real Estate Service Corporation were as follows: 1937
1938
Gross income
$10,083.10
$13,802.88
Net income
1,445.14
3,758.73 [1]
In computing net income deductions were made for commission of 5 per cent paid to the Reo Real Estate Service Corporation for services performed by it. In her returns for the taxable years, petitioner reported gross income and tax-exempt interest as follows: 1937
1938
Gross income
$68,953.45
$21,034.52
Tax-exempt interest
6,746.23
9,180.66
The petitioner paid to the collector the following amounts in connection with the deficiencies involved herein: Date Paid
Tax
Interest
Year
8/9/41
$5,500.00
1937
8/9/41
1,500.00
1938
4/8/42
$1,122.60
1937
4/8/42
216.16
1938
Totals
$7,000.00
$1,338.76
*248 Opinion The first point under the issue is whether the salaries were paid, the contention of the respondent being that the evidence does not prove payment. The deficiency notice does not deny payment; it merely gives as grounds for disallowing the deduction that, as to 1937, "Salary of secretary in the amount of $3,600 * * * have been disallowed for both years"; and that, as to 1938, "Salary of secretary, $3,600, as for 1937, is held to be not an allowable deduction." These determinations were made prior to the enactment of section 23 (a) (2) of the Internal Revenue Code. Respondent entered a general denial to the allegations of fact in the amended petition alleging payment. In his opening statement at the hearing counsel for the petitioner alleged payment of the salaries, which counsel for the respondent did not question but stated that he believed "counsel for the petitioner has succinctly stated what the issues are." In response to a question of the Court as to the amount of salary he received from petitioner and her brother, Creamer testified that he received $3,600 from petitioner. We are of the opinion that the evidence proves payment of the salaries in the respective taxable *249 years, especially in view of the form of references to salary in the deficiency notice and lack of any controversy on the point at the hearing. The nub of the respondent's contention on the merits of the issue is that others, namely, the Hanover Co., the Bank of Manhattan Co., and the Reo Real Estate Service Corporation, were paid to perform the services performed by Creamer with the exception of work in connection with a few mortgages not intrusted to their management and one parcel of real estate constructed in 1938, and that Creamer actually attended to personal affairs of petitioner, her brother and his wife. Petitioner inherited a large sum of money from her parents and was not equipped by education or experience to successfully direct the management of her fortune. The fact that Creamer had been employed for many years as secretary to the petitioner's father and mother is only a circumstance. The fact is that he performed services for petitioner incident to the production of income, even though he did not have direct charge of all of her income-producing property. He represented the petitioner in dealing with those who more directly managed most of the property. In our opinion *250 the salary expense was that of production and collection of income, and management and maintenance of property held for production of income, under the statute. The services were ordinary and necessary, and the respondent does not question the reasonableness of the compensation, if otherwise deductible. Creamer devoted about one-tenth of his time to personal affairs of petitioner. Accordingly, one-tenth of the salary, or $360 each year, is disallowed as a deduction. Also one-half day a week was devoted to affairs of a brother's wife. The petitioner has not shown that such services were not covered by the salary paid by her. We therefore disallow one-twelfth of the salary, or $300. Likewise, the portion of the salary allocable to tax-exempt interest is not deductible. Section 24 (a) (5), supra. Petitioner's income in 1937 was $75,699.68, of which $6,746.23 was tax-exempt interest, and in 1938, her income was $30,215.18, of which $9,180.66 was tax-exempt interest. Under the circumstances, of the salary paid, $ 6,746.23/75,699.68ths or $262.06 in 1937 and $ 9,180.66/30,215.18ths or $893.29 in 1938, is disallowed as a deduction. The remainders, $2,677.94 in 1937, and $2,046.71 in *251 1938, are allowed as deductions. Decision will be entered under Rule 50. Footnotes
1. SEC. 24. ITEMS NOT DEDUCTIBLE. "(a) General Rule. - In computing net income no deduction shall in any case be allowed in respect of -" * * * * *
"(5) * * * any amount otherwise allowable under section 23 (a) (2)↩ which is allocable to interest (whether or not any amount of such interest is received or accrued) wholly exempt from the taxes imposed by this chapter;"
1. Loss.↩