# William H. Jamison, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 8462. Promulgated January 28, 1947.

*Harold A. Kertz, Esq.*, for the petitioner.
*Homer F. Benson, Esq.*, for the respondent.

175

OPINION.

Johnson, *Judge*: *Issue No. 1.*—In computing petitioner's taxable income, the Commissioner disallowed the deduction of $7,300 claimed for 1942 as a loss sustained by the abandonment of 3 lots in Brigantine, New Jersey, and the deduction of $3,000 claimed for 1943 as a loss sustained by the abandonment of 31 lots near Morehead, North

Carolina. Respondent does not dispute the amounts of the losses claimed and that petitioner deeded the lots to the respective states in order to avoid payment of taxes, as the evidence establishes. But he contends that these losses are capital in nature, and that their deduction is subject to section 117 (d) (2), Internal Revenue Code,[1] which imposes a limitation equal to the taxpayer's capital gains or $1,000, whichever is smaller. As petitioner for each year sustained other capital losses in excess of $1,000, the maximum deduction was absorbed by them, and the losses in controversy were disallowed in full.

Petitioner assails the determination that the deductions claimed involved losses from the sale or exchange of capital assets as defined by section 117 (a).[2] He contends that as to the 3 lots in Brigantine, New Jersey, and the 31 lots in North Carolina, he is entitled to a deduction for the full loss on these properties, since there was no sale or exchange, but rather an abandonment, and under the circumstances the loss is an ordinary one and not subject to the limitation of $1,000 prescribed in section 117 (d) of the code. He cites *Commonwealth, Inc.*, 36 B. T. A. 850, and *James B. Lapsley*, 44 B. T. A. 1105, as supporting the deduction of an ordinary loss under the circumstances shown. In these cases this Court held that an ordinary loss resulted where the owner of realty subject to a mortgage deeded the property to the mortgagee without consideration and thereby sustained a loss, since the owner was not personally liable for the indebtedness covered by the mortgage.

Respondent asserts in his brief "that in conveying title to the taxing authorities petitioner was making a forced conveyance which the courts hold the equivalent of a foreclosure sale," and cites *Helvering* v. *Nebraska Bridge Supply & Lumber Co.* (1941), 312 U. S. 666, and *Helvering* v. *Hammel* (1941), 311 U. S. 504.

In the pending case there was nothing to indicate a "forced conveyance," as there was no evidence that the taxing authorities had brought or threatened foreclosure of the tax lien, but, on the contrary, it appears that the taxpayer's action in deeding both properties was voluntary and he manifested to the taxing authorities his desire to deed the properties as he wished to abandon same, having decided that their value was less than the taxes thereon.

---

[1] Sec. 117 (d) (2). In the case of a taxpayer other than a corporation, losses from *sales or exchanges* of capital assets shall be allowed only to the extent of the gains from such sales or exchanges, plus the net income of the taxpayer of $1,000, whichever is smaller. [Italics supplied.]

[2] Sec. 117 (a) (1). Capital Assets.—The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer * * * or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (l) * * *

The laws of New Jersey and North Carolina, in which two states these properties are located, both expressly provide that there is no personal liability against the owners of realty for taxes due thereon. The dollar consideration recited not being paid and petitioner not being personally liable for the taxes, the conveyances of both properties were without consideration. As was said in *Commonwealth, Inc., supra,* "Inasmuch as there was in fact no consideration to the petitioner, the transfer of title was not a sale or exchange. The execution of the deed marked the close of a transaction whereby petitioner abandoned its title."

The cases of *Helvering* v. *Hammel* and *Helvering* v. *Nebraska Bridge Supply & Lumber Co.,* cited by respondent, are clearly distinguishable from this case. In both of these cases the title to the property passed, not by a deed voluntarily executed without consideration for an abandonment of the property, but in the former by virtue of a foreclosure sale, based upon a court decree foreclosing the lien, and in the latter by tax sale. In the *Hammel* case the taxpayer was one of a syndicate which defaulted in payment of indebtedness secured by lien on realty. The holder of the indebtedness obtained judgment and a foreclosure decree without equity of redemption and thereafter the "Sheriff sold the property at public auction" and the taxpayer lost the amount he had invested therein. The taxpayer contended, and the Circuit Court held, 108 Fed. (2d) 753, that, since the taxpayer was not a party to the sheriff's sale and neither contracted for nor consented to it and received no part of the consideration and was deprived of his interest in the property, not by sale, but by adverse judicial proceeding, the sheriff's sale was not a sale within the meaning of section 117 (d). The Supreme Court, however, reversed the Circuit Court and held that the word "sale" in section 117 (d) was comprehensive enough to cover a *forced sale* or a sale foreclosing the lien and was not restricted to a private or voluntary sale, as had theretofore been held. We quote from the Supreme Court's opinion in the *Hammel* case:

\* \* \* *the sale* was the definitive event establishing the loss within the meaning and for the purpose of the revenue laws. They are designed for application to the practical affairs of men. *The sale,* which finally cuts off the interest of the mortgagor and is the means for determining the amount of the deficiency judgment against him is a means adopted by the statute for determining the amount of his capital gain or loss from *the sale* of the mortgaged property. [Italics supplied.]

In the *Nebraska Bridge* case, *supra,* the taxpayer owned land upon which there were delinquent taxes secured by a tax lien, but no personal liability against the owner, and the taxpayer's property was divested, not by a conveyance without consideration, but the state foreclosed its lien and "the lands were bought in by the state at a regular tax *sale* for the amount of the delinquent taxes."

The Circuit Court of Appeals for the Eighth Circuit, at 115 Fed. (2d) 288, held in favor of the taxpayer that such transaction did not constitute a sale and that the loss was an ordinary one and not limited by section 117 (d), but the Supreme Court, following its decision in the *Hammel* case, decided shortly prior thereto, reversed the judgment of the Circuit Court without a written opinion.

Subsequent to the decisions by the Supreme Court in the *Hammel* and *Nebraska Bridge* cases, this Court decided the *Lapsley* case, *supra*, where the property involved was subject to a mortgage which the taxpayer had not assumed or agreed to pay, and during the taxable year it was deeded to the mortgagee without consideration, petitioner thereby sustaining a loss. We held that the loss was an ordinary one, deductible in full and not subject to the limitation contained in section 117 (d). In that case, as in this, the respondent asserted that the decision in the *Commonwealth, Inc.*, case had been reversed by the *Hammel* and *Nebraska Bridge* cases, and in disposing of that contention this Court said:

The Board has not taken the view that the *Commonwealth* case was in effect reversed or overruled by the cited cases. Our view, expressed in *W. W. Hoffman*, 40 B. T. A. 459, that an ordinary loss, deductible in full, was sustained by a taxpayer who abandoned real estate subject to mortgages which he had never assumed, was recently affirmed by the Circuit Court of Appeals for the Second Circuit. *Commissioner* v. *Hoffman*, 117 Fed. (2d) 987. A similar conclusion was reached in *Warner G. Baird*, 42 B. T. A. 970, where a quitclaim deed was given, "not to relieve petitioner of a liability, but only to simplify the transfer of title." It was pointed out that as to petitioner the transaction "had no aspect of a sale or exchange," the *Commonwealth* case being cited. After the Supreme Court handed down its opinions in the *Hammel* and *Electro-Chemical* cases respondent filed a motion to vacate. In a *Memorandum Sur Decision Under Rule 50 and Denial of Motion to Vacate* subsequently published in 43 B. T. A. 415, it was said: "These opinions of the Supreme Court have been duly considered and are found to be distinguishable and to require no modification of the Board's opinion in the present proceeding." In *Bert B. Burnquist*, 44 B. T. A. 484, the petitioner "had no continuing liability" on a mortgage at the time a quitclaim deed was given to the mortgagee. We followed the *Commonwealth* case and held that, since there was no sale or exchange of a capital asset, the loss should be allowed as an ordinary loss, not limited by section 117 (d) of the Revenue Act of 1936.

In the more recent case of *George Hewitt Myers*, 3 T. C. 1044, where the loss sustained was by reason of unpaid stock assessment for which petitioner had no personal liability, the stock was sold pursuant to the state statute and bought in by the issuing corporation, we held that, since the title passed by forced sale, such loss was governed by the *Hammel* case and subject to capital loss limitation of section 117 (d), but the opinion expressly states that if there had been no sale the doctrine announced in the *Commonwealth, Inc.*, case would be applicable. We quote from the *Myers* opinion:

\* \* \* Thus a mere abandonment in favor of the lien holder without the interposition of any sale falls outside the definition. E. g., *Bert B. Burnquist*, 44 B. T. A. 484; appeal dismissed (C. C. A., 8th Cir.), 123 Fed. (2d) 64; *James B. Lapsley*, 44 B. T. A. 1105; *Stokes* v. *Commissioner* (C. C. A., 3d Cir.), 124 Fed. (2d) 335. But it is not entirely apparent that petitioner denies the existence of a sale here. In any event, we find it impossible to do so. \* \* \*

In *Stokes* v. *Commissioner*, 124 Fed. (2d) 335, the Circuit Court of Appeals for the Third Circuit held that if the taxpayer who is not personally liable conveys the mortgaged premises to the mortgagee, who accepts the deed without paying or promising to pay anything therefor, the transaction is not a "sale" or "exchange" within the meaning of section 117 (d). In that case, as in the pending one, the Commissioner contended that the *Hammel* and the *Nebraska Bridge* cases were in conflict with such holding, and the opinion of the Circuit Court in the *Stokes* case, in answering such argument, used this language:

It is contended on behalf of the Commissioner that the case is governed by *Helvering* v. *Nebraska Bridge Supply & Lumber Co.* (1941), 312 U. S. 666, 667, 61 S. Ct. 827, 85 L. Ed. 1111, which follows *Helvering* v. *Hammel* (1941), 311 U. S. 504, 61 S. Ct. 368, 85 L. Ed. 303, 131 A. L. R. 1481, and *Electro-Chemical Engraving Co., Inc.* v. *Commissioner of Internal Revenue* (1941), 311 U. S. 513, 61 S. Ct. 372, 85 L. Ed. 308. Each of these cases, however, involved a sale, i. e., a foreclosure sale or a tax sale; the only issue being whether such forced sales were outside the contemplation of Congress in referring to sales. \* \* \*

A case in which the essential facts are very similar to those here considered is *Bickerstaff* v. *Commissioner*, 128 Fed. (2d) 366, decided by the Circuit Court of Appeals for the Fifth Circuit subsequent to the Supreme Court's opinion in the *Hammel* and *Nebraska Bridge* cases. A comparison of this case and the *Bickerstaff* case reveals that both involve deductions based on realty abandoned as worthless by the taxpayer to the taxing authorities on which there were delinquent taxes secured by tax lien but no personal liability against the owner.

Comparing further, the term of tax delinquency in both cases was practically the same, Bickerstaff being three years in arrears and in this case two years on the Brigantine lots and three on the North Carolina lots being unpaid. The aggregate amount of delinquent taxes unpaid is practically the same, Bickerstaff being $75 and in this case the total unpaid taxes on the Brigantine lots were $104, and on the North Carolina lots $82.88. In both cases the taxpayer was financially able to pay the taxes, but determined that the properties were not worth the taxes due on them, and in each case the taxpayer wrote the taxing authorities that he desired to stop further tax payments on the property and abandon same, and in both the taxpayer made deeds conveying the properties to the taxing authorities

and the owners thereafter exercised no further possession or claim to them. The deed in the *Bickerstaff* case was received and retained by the tax collector but not recorded, since its attestation was not in compliance with law. The deeds in this case were legally executed and accepted.

While such details of accidental factual analogy are not severally factors of decisive importance, in the aggregate they present a set of circumstances which can not be distinguished from those out of which this issue arises. And although the year of loss was the subject of controversy in the *Bickerstaff* case, while the issue here is whether the loss was produced by a sale or exchange or resulted from an abandonment, it would seem that the opinion is nonetheless pertinent because the Circuit Court held specifically that Bickerstaff had abandoned his property in 1935 and a finding of abandonment was essential to the decision rendered, inasmuch as no deed, sale, or affirmative transfer of the property was effective until 1937.

There was more reason to assert in the *Bickerstaff* case, as respondent has here done, that the taxpayer's action was a "forced conveyance," for in the *Bickerstaff* case, prior to the taxpayer's action in deeding the property, the tax authorities had issued a tax certificate for delinquent taxes, authorizing sale of the property, while in this case no action of any kind is shown to have been taken by the taxing authorities looking toward a foreclosure of the tax lien; but it appears the petitioner voluntarily initiated action which resulted in his abandonment in deeding the properties.

In the *Bickerstaff* case, two years after the taxpayer deeded the property to tax authorities the state sold it to a third party by virtue of the delinquent tax certificate, and the Commissioner contended that, since the taxpayer's deed was defective, the loss did not occur in 1935, when such deed was made, but in 1937, when the state deeded the property to a third party, and, further, that it had not been shown that the property became worthless in 1935, the taxable year involved. This latter contention respondent makes here.

The Circuit Court, in the *Bickerstaff* case, held that the loss was sustained in 1935 and the taxpayer's deed, though not legally executed, was evidence of his abandonment of the property and its worthlessness to him at that time and entitled him to the deduction as claimed. We quote from this opinion:

It appears that the taxpayer was financially able to make payment of the taxes assessed against the property. He refused to make the payments, and made a bona fide attempt to divest himself of title. His attempt to divest himself of title, although ineffective under Florida law because of improper attestation of the deed, was clear evidence of his intention to abandon the property and of its practical worthlessness to him. All that is required is that property actually be abandoned; a technical, legal abandonment and relinquishment of title is not always required. * * *

In this case we are convinced from the testimony and petitioner's action, that the petitioner in 1942, as to the Brigantine lots, and in 1943, as to the North Carolina lots, then determined that no profit could be expected from his investment and that the respective properties were not worth the amount of taxes assessed against them and they were therefore worthless and he abandoned them in those years. The record discloses no act manifesting petitioner's abandonment or intention to abandon prior to these dates.

Under the circumstances we are of the opinion that his renunciation of title in the exercise of reasonable business judgment may be deemed to indicate the time of worthlessness. *Helvering* v. *Gordon* (C. C. A., 4th Cir.), 134 Fed. (2d) 685; *Larus* v. *Commissioner* (C. C. A., 2d Cir.), 123 Fed. (2d) 254; *Helvering* v. *Jones* (C. C. A., 8th Cir.), 120 Fed. (2d) 828. Or, as we said in *Commonwealth, Inc., supra*, the execution of the deeds by the petitioner to these properties marked the close of a transaction whereby petitioner abandoned his properties. We find, further, that the transaction as to both properties was not a "sale" or "exchange" within the purview of section 117 (d) and the amount of losses on such properties is not limited thereby.

We therefore hold that petitioner sustained ordinary and not capital losses in 1942 as to the Brigantine lots and in 1943 as to the North Carolina lots and is entitled to deduction for the full amount of his losses on both.

*Issue No. 2.*—For 1943 the Commissioner disallowed a claimed loss of $106.37 resulting from petitioner's sale of a dwelling at Dormont. The parties are not in dispute that the loss occurred in the amount and during the year claimed, but the Commissioner determined that the dwelling was a capital asset and, as he had allowed the deduction of other capital losses in the amount of $1,000 maximum deductible, he disallowed the loss in controversy. Petitioner assails the determination, alleging that the property was used in his business of renting improved real estate, and as such, does not fall within the definition of a capital asset. The evidence establishes that for many years petitioner had acquired, repaired, and rented apartment houses and dwellings in Pittsburgh and that he derived a gross annual income of over $10,000 from this business. The dwelling sold was acquired with four others by foreclosure in 1938. All were rented, and petitioner's decision to sell this one resulted from the necessity for repairs which he was not disposed to make. It is settled that the renting of dwellings may constitute a trade or business, *George S. Jephson*, 37 B. T. A. 1117, and recent decisions support the view that:

* * * where the owner of depreciable property devotes it to rental purposes and exclusively to the production of taxable income, the property is used by him in a trade or business, * * *

and, "being subject to the allowance for depreciation," such property does not fall within the definition of a capital asset, so that on disposition the resulting gain or loss is governed by the provision of section 117. *Fackler* v. *Commissioner* (C. C. A., 6th Cir.), 133 Fed. (2d) 509; affirming 45 B. T. A. 708. To the same effect are *Leland Hazard*, 7 T. C. 372, and *N. Stuart Campbell*, 5 T. C. 272. The Commissioner erred in disallowing this loss.

Petitioner also contended that the foregoing losses were deductible in full because he held the properties primarily for sale to customers in the ordinary course of his trade or business. If so, they are expressly excluded from the limitations imposed by section 117 (a) (1). He argues that he was regularly engaged in the business of buying and selling real estate. In view of the foregoing disposition of the issue in petitioner's favor, we find it unnecessary to decide the question so raised.

*Issue No. 3.*—During 1942 and 1943 petitioner paid and deducted on his income tax returns $3,379.07 and $3,694.94, respectively, as the expenses of maintaining an office. The Commissioner disallowed $293.58 and $316.04 of these deductions as being "that portion of such expenses allocable to the collection of nontaxable income." These figures result from a computation whereby office expenses were allocated to taxable income and nontaxable income of such years in the proportion that each bears to the total of the taxable and nontaxable income of the petitioner for such years. Petitioner properly does not contest the propriety of disallowing any portion of office expenses which should be allocated to nontaxable income, such portion being expressly nondeductible under section 24 (a) (5), Internal Revenue Code. He contends, however, that no portion is allocable to such income because he merely collected it and did not need an office for that purpose. As he was engaged in renting properties and also had substantial investments from which he derived the major part of his income, we shall not assume that he used the office exclusively for his business of renting. His testimony concerning its use discloses merely that he normally went to it every day when in Pittsburgh, but had no regular hours. It is at least compatible with the meager evidence adduced that he made general use of it for purposes connected with his renting business and also with the management of his investments, regardless of the taxability of income. To support his contention he has not offered evidence affording any basis for an allocation of expenses among such uses. In *Higgins* v. *Commissioner*, 312 U. S. 212, the Supreme Court recognized the propriety of dividing the cost of office maintenance between a taxpayer's real estate business and the care of his investments, and because the latter did not constitute a business, the portion allocable to it was held nondeductible. Petitioner has neither proved nor alleged that the care

of his security investments was a business, or that he did not use his office for purposes connected with them.   In any event it is not to be presumed that he did not use the office for that part of his income which was tax-exempt.   This case seems indistinguishable from *Edward Mallinckrodt, Jr.*, 2 T. C. 1128; affd., 146 Fed. (2d) 1; certiorari denied, 324 U. S. 871, wherein we said:

\* \* \* Since the parties submitted no evidence bearing directly on the question as to what portion of the expenditures should be allocated to nontaxable income, and in the absence of evidence indicating what would constitute a more reasonable basis for such allocation, we hold such expenditures for the respective years are to be allocated to taxable income and nontaxable income of such years in the proportion that each bears to the total of the taxable and nontaxable income of the petitioner for such years.

We adhere to the rule so stated for application here and, as the Commissioner has given effect to it in computing the amounts of expenses disallowed, we approve his determination.

Of the medical expenses claimed by the petitioner for 1942, the Commissioner disallowed $322.73.   The parties have stipulated that such expenses in the amount of $859.13 were paid by petitioner, and proper adjustment should be made therefor.

Reviewed by the Court.

*Decision will be entered under Rule 50.*