Clinton L. **WHITTEMORE**, Jr., and Anne
W. Whittemore, Plaintiffs,

v.

**UNITED STATES** of America,
Defendant.

No. 64C 219(1).

United States District Court
E. D. Missouri, E. D.

Aug. 25, 1966.

Shepley, Kroeger, Fisse & Shepley, St. Louis, Mo., for plaintiffs.

Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo., for defendant.

## MEMORANDUM OPINION

HARPER, Chief Judge.

This suit was instituted by the plaintiffs for a refund of income taxes paid by the taxpayers as a result of deficiency assessments for the years 1959 and 1960. The suit was timely filed and jurisdiction of this court exists under 28 U.S. C.A. § 1346. The deficiency assessments result from the disallowance of part of the deductions claimed by taxpayers for trustee's commissions paid in two trusts and executor's and attorney's fees paid in an estate upon final distribution of the two trusts and the estate, of which the plaintiff, Clinton L. Whittemore, Jr., was a beneficiary.

The issue was submitted to the court on a stipulation, which incorporated a number of exhibits; the testimony of Leroy A. Osmont, vice-president and trust officer of the St. Louis Union Trust Company; eight additional exhibits introduced during the trial; and the plaintiffs' answers to Interrogatories Numbers 3, 4, 5, 6, 11, 14, 19 and 21.

The evidence disclosed that the St. Louis Union Trust Company was trustee of two trusts created by Henry C. Haarstick, the grandfather of plaintiff, Clinton L. Whittemore, Jr., and was the surviving executor of the estate of Emma H. Whittemore (hereinafter referred to as the estate), the mother of Clinton L. Whittemore, Jr.

The trust terminated in 1959 was created by the will of Henry C. Haarstick. The other trust, terminated in 1960, had been created in 1910 by Henry C. Haarstick some nine years before his death. The estate was admitted to probate in 1958 and was distributed in 1960.

While we are dealing with three separate accounts, it is the position of the parties that the problem with respect to each is the same.

The detailed information with respect to the trusts and the estate, and what transpired with respect to the levying of the assessment and payment of the tax, will not be set out in detail since these matters are set forth in the stipulation which will be made a part of the findings of fact.

The trust created by the will and distributed in 1959 provided in part: "The trustees shall pay * * * a reasonable compensation to the said trustees for their services." A five percent commission of the yearly gross income and at the termination of this trust an additional sum equal to five percent of the actual value of the principal or corpus of the trust estate was charged by the trustee as compensation pursuant to the policy of the trust·company in force at the time of the creation of the trust.

The trust created in 1910 and distributed in 1960 provided in part: "Said trustee shall pay * * * compensation to itself equal to 2½% of the gross income received from time to time from said trust estate, and at the termination of this trust * * * an additional sum equal to 2½% of the actual value of the principal or corpus of the trust estate in its hands as trustee."

Each trust and the will of Emma H. Whittemore gave very broad powers to the trustees and executor respectively as to the handling of the property under their control.

The evidence disclosed that among the assets of each of the trusts when distributed, and the estate of Emma H. Whittemore, was a number of state, county and municipal bonds (hereinafter referred to as municipal bonds). The evidence further disclosed with respect to the two trusts that for many years a substantial part of the assets of the trusts had consisted of municipal bonds, and a part of the Emma H. Whittemore estate when admitted to probate consisted of municipal bonds. The evidence disclosed during the years in which the matter was relevant that when the trust company filed and paid the income tax on the income of the trusts and the estate the interest from the municipal bonds (which was tax free) was not included, and that that part of the commission paid each year on gross income to the trust company attributable to interest from the municipal bonds was not deducted on the income tax return as an expense. The evidence further disclosed that the estate tax on the estate was paid by the executor out of the estate, and the expenses of administration, which included attorney's fees and fees based upon the entire value of the estate (including the municipal bonds) were deducted as an expense. When the trust estates were distributed in 1959 and 1960, respectively, termination commissions were paid to the St. Louis Union Trust Company on each of the trusts, and in 1960 the executor's statutory commission was paid to the trust company and the attorney's fees involved was paid upon the final distribution in that year on the estate of Emma H. Whittemore.

The income from the two trusts and the estate in the final year of each was insufficient in each instance to pay the termination commissions with respect to the trusts and the executor's and attorney's fees with respect to the estate.

It is undisputed that the Internal Revenue Code provides that the amount by which such termination commissions of the trusts or executor's commissions and attorney's fees of the estate exceed the income of the trusts or the estate in its final year shall be allowed as deductions to the beneficiary succeeding to the property of the trust or the estate. Clinton L. Whittemore, Jr., was a one-third beneficiary of the trusts and the estate involved and was, therefore, entitled to a deduction of one-third of that part of the termination commissions, executor's commissions and attorney's fees not paid from income in the final year of each.

The evidence disclosed that the Internal Revenue agent in auditing the return of the two trusts and the estate reduced the deductions taken by each trust for trustee's termination commissions and the estate for executor's commissions and attorney's fee. The amount disallowed in each instance bears the same relation to the total termination commissions or executor's commissions and attorney's fees claimed as a deduction as the fair market value of the municipal bonds held in the trust or estate, respectively, plus accrued interest thereon, bears to the total fair market value of the trust corpus or the estate, respectively, at the date of termination of the trusts and estate. The plaintiffs in filing their 1959 and 1960 income tax returns took one-third of the applicable full deductions referred to unpaid by income in each of the trusts and the estate. When the 1959 and 1960 income tax returns of the plaintiffs were audited one-third of the disallowed deductions of the trusts and the estate referred to were disallowed and a deficiency assessment on such basis was made against the plaintiffs. The plaintiffs paid the deficiency assessments and after complying with the legal requirements filed this suit to recover the taxes paid as a result of the deficiency assessments.

The sole issue before the court is whether the trustee's commissions and executor's and attorney's fee are fully deductible or are partially non-deductible for the reason that a part of the assets of the trusts and the estate were municipal bonds, the income from which is tax exempt.

The termination compensation (sometimes referred to herein as commissions or fees) paid in the trust estate distributed in 1959 was computed by five percent of the total fair market value of the trust assets at the time of termination, the termination compensation paid on the trust terminated in 1960 was 2½ percent of the total fair market value of the assets of the trust at its termination in accordance with the provisions of the trust agreement, and the executor's fees (sometimes referred to herein as commissions) in the Emma H. Whittemore estate were computed in accordance with the Missouri statutes, and the attorney's fee paid was fixed by agreement.

The plaintiffs contend that the termination compensation in the trust estates and the executor's and attorney's fee in the estate of Emma H. Whittemore have no relation to the production of income and were paid solely for management and maintenance of property held for the production of income, and that as a result such fees are deductible, even though the income from the investment is wholly exempt from income tax.

The plaintiffs' evidence made no effort to relate the termination compensation paid with respect to the trusts nor the executor's and attorney's fee with respect to the estate to any particular service. The trust company did not analyze the services to be performed, or performed, to any particular unit value. The testimony disclosed that it would be very hard, if not impossible, to differentiate between the services performed by the trust company for the production and collection of income and the services for the management of property, in that most services have a dual nature and are not for either one purpose or the other. Investment services are dual in nature, pertaining to the production of income as well as the management. The only service clearly related to the management of

the property would be the distribution, and the termination compensation is not paid simply for this, as distribution is a very minor matter, requiring little work.

The executor's and attorney's fees paid in the Emma H. Whittemore estate were paid for services for "the production and collection of income of the estate and the management, conservation and maintenance of the property of the estate." (Answer to Interrogatory No. 19.)

In some instances it may be possible to divide a trustee's services into entirely separate parts and to keep separate accounts with respect to each, but ordinarily this is not true, as such services cannot be measured in that sense, and the testimony indicates that the services of a trustee are to protect and improve the property, and in turn protect and increase the income, and it is impossible to disentangle the services with respect to each as they are so interrelated, and the actual distribution of income or assets is a trifling matter.

An examination of the exhibits reflects the same as the testimony with respect to this problem.

One need but look at the two trust agreements in question and the will of Emma H. Whittemore to realize that the commissions and attorney's fees involved are in no way set up to support the plaintiffs' contentions. As to the trust established in 1910, it provides at the termination an additional sum of 2½% of the corpus shall be paid as compensation. The other trust is silent except to provide for reasonable compensation, and the rates charged were based on the policy of the trust company at the time the trust was created. The Missouri statutes as to the commissions and attorney's fees involved in the estate do not detail the basis for such except as to amounts, and the provisions of the will involved with respect to powers of the executor were as broad as the trust agreements involved.

The sections of the Internal Revenue Code applicable to the problem are 26 U.S.C.A. § 212 and 26 U.S.C.A. § 265. Both of these sections were carried forward from the 1939 Internal Revenue Code, unchanged in any material part. These statutes have been interpreted in dealing with tax exempt income.

In Mallinckrodt v. Comm., 2 T.C. 1128 (1943), aff'd Mallinckrodt v. Nunan, 8 Cir., 146 F.2d 1, cert. den'd 324 U.S. 871, 65 S.Ct. 1017, 89 L.Ed. 1426 the expenses of an investor, consisting of salaries, investment advice, collection services, together with fees and commissions of trustees of certain revocable trusts, were litigated to determine if such expenses were deductible, and the tax court held that the expenses are allowable to the extent allocable to taxable income. The expenses allocable to non-taxable income are not deductible, and the court at page 1148 said:

"Since the parties submitted no evidence bearing directly on the question as to what portion of the expenditures should be allocated to nontaxable income, and in the absence of evidence indicating what would constitute a more reasonable basis for such allocation, we hold such expenditures for the respective years are to be allocated to taxable income and nontaxable income of such years in the proportion that each bears to the total of the taxable and nontaxable income of the petitioner for such years."

In Jamison v. Comm., 8 T.C. 173, 183, the tax court adhered to the rule stated in *Mallinckrodt*, and quoted that part which the court has quoted, supra.

65–2 C.C.H. Par. 2006.09 has this to say with respect to Herbst v. Comm., 2 T.C.M. 361:

"Where a bank received a certain percentage of the market value of securities in a special investment account for its services as custodian and investment counsel, those fees, with the exception of the portion thereof allocable to tax-exempt securities, are deductible."

At page 368 of the *Herbst* case the court had this to say:

"In our opinion the salary expense was that of production and collection

of income, and management and maintenance of property held for production of income, under the statute. The services were ordinary and necessary, and the respondent does not question the reasonableness of the compensation, if otherwise deductible. * * * the portion of the salary allocable to tax-exempt interest is not deductible."

The division was then made as to what was deductible based on the total income of both types, as in the *Mallinckrodt* case.

In Di Borgo v. Comm. of Int. Rev., 23 T.C. 76, the tax court was dealing with commissions paid a trustee upon the revocation of a trust. The taxpayer claimed that the commissions paid out of principal were paid solely for the management, conservation or maintenance of trust property within the meaning of the Internal Revenue Code as distinguished from expenses for the production or collection of income, and that such commissions were deductible. The court at page 81 had this to say:

"We are thus faced with a record in which there is no basis for determining what part of the trustee's commissions under consideration was paid for services for 'the production or collection of income,' and what part was paid for 'the management, conservation, or maintenance of property held for the production of income.' There is no foundation for apportionment by us in relation to the above categories (or, for that matter, in any other categories that may here be material). We have little doubt that the services were interrelated, and as such, in a practical sense, are allocable directly or indirectly to both categories.

"The burden of proof is, as previously pointed out, upon the petitioner. * * * Her burden of proof required her to establish either that none of the commissions which she now seeks to deduct is so allocable, or, at least, that a proportion thereof in excess of that which was the basis of the deduction on her income tax return is not so allocable. Upon the record, she has achieved neither result.

"It is thus unnecessary for us to consider whether or not the provisions of section 24(a) (5) would have been applicable if petitioner had established the foundation of fact which would have been essential to its materiality."

The facts before the court with respect to the basis for the payments involved are even more difficult to allocate than in the *Di Borgo* case. The provisions of the two trusts with respect to payment to the trustee for its services does not in any manner undertake to distinguish or set forth the basis for such payment. In the trust created by will it designates the payment as reasonable compensation for services, and in the 1910 trust agreement makes no reference to what the compensation is for.

The court in the *Di Borgo* case held that similar proof was insufficient to sustain the plaintiff's burden of proof. The decision there is equally applicable to the evidence before this court, and the court concludes that the plaintiffs have failed to sustain their burden of proof and they cannot recover.

Had the evidence disclosed an allocation of the termination compensation with respect to the two trusts and the executor's fees and attorney's fees with respect to the estate between production of income and management, conservation or maintenance of property held for the production of income, the result would still be the same.

An examination of the provisions of the trust agreement with respect to compensation and the provisions of the will governing the estate, the *Mallinckrodt, Jamison* and *Herbst* decisions, and the statute referred to, leads the court to the conclusion that the plaintiffs would not be entitled to a refund as to any portion of the termination compensation, executor's and attorney's fees paid in the trusts and the estate allocable to the municipal bonds, regardless of allocation of expenses between production of income and management, conservation or maintenance of property held for production of income, as this is payment pri-

marily for services previously performed, and regardless of what we call it was primarily aimed at producing income. With respect to the question of allocation made by the Internal Revenue agent as to these deductions, it is proper under the *Mallinckrodt* and *Jamison* decisions, supra.

The court adopts this memorandum opinion and the stipulation as its findings of facts, this memorandum opinion as its conclusions of law, and the clerk will prepare and enter a judgment in favor of the defendant as to Counts 1 and 2 of plaintiffs' complaint.