AUGUSTUS J. FABENS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 984–72.    Filed September 10, 1974.

*Charles R. Van de Walle* and *James Sawyer*, for the petitioner.
*Michael K. Phalin,* for the respondent.

STERRETT, *Judge:* Respondent asserted a deficiency of $17,578 in petitioner's income tax for the calendar year 1969. The only aspect of the deficiency that remains in dispute concerns the deductibility of fiduciary commissions, amounting to $53,894.67, which petitioner paid to Bankers Trust Co. on June 16, 1969, upon termination of a trust account. What portion of that commission expense is allocable to tax-exempt income and therefore not deductible is the question before us.

FINDINGS OF FACT

Augustus J. Fabens (hereinafter petitioner) is an individual with legal residence in Boston, Mass. He filed his individual income tax return for the taxable year 1969 with the district director of internal revenue in Andover, Mass. The facts of this case have been presented by a stipulation and attached exhibits which are incorporated herein by this reference.

During the period April 9, 1953, through June 16, 1969, petitioner maintained securities in a trust account with Bankers Trust Co., 16

Wall Street, New York, N.Y. Upon termination of the trust on June 16, 1969, petitioner paid Bankers Trust Co. the following fiduciary commissions:

1. Receiving commission based on capital appreciation of assets sold, redeemed, and collected_____ $717.31
2. Receiving commission based on capital increase of assets distributed _____ 18,401.12
3. Paying commission based on market value at date of distribution, administrative expenses, and assets remaining on hand_____ 31,576.30
4. Trustee's annual principal commission (based on the then current market value of the fund)_____ 1,279.42
5. Trustee's annual income commission (based on income collected for the period 5/3/68–6/1/69)_____ 1,920.52

     Total fiduciary commissions due and paid Bankers Trust Co. upon termination of trust agreement in June 1969_____ 53,894.67

These amounts were claimed as a deduction on petitioner's tax return for the year 1969. The respondent disallowed as a deduction $15,667 of the aforesaid sum of $53,894.67.

The parties stipulated other relevant information as follows:

| | Applicable to municipal bond holdings | Applicable to nonmunicipal bond holdings | Total |
|---|---|---|---|
| Income due to dividends and interest realized over the the life of the trust, 4/9/53–6/16/69_____ | $211,443 | $503,641 | $715,084 |
| Capital gain income realized over the life of the trust as a result of sales, liquidations, distributions, or uncollectibility of principal, 4/9/53–6/16/69_____ | (127,340) | 152,349 | 25,009 |
| Unrealized income from appreciation during period 4/9/53–6/16/69_____ | 0 | 1,476,023 | 1,476,023 |
| Ordinary income realized by the trust for the calendar year 1969_____ | 9,028 | 15,715 | 24,743 |

The market value of the assets (all of which were nonmunicipal bond holdings) held by Bankers Trust Co. at the date of distribution to the petitioner was $2,516,010.27.

#### OPINION

The fiduciary commissions that petitioner paid on June 16, 1969, were incurred for the administration of a trust account that included both municipal bonds and taxable securities. The commissions consisted of receiving and paying commissions of $50,694.73 (hereinafter termination commission), an annual principal commission of $1,279.42, and an annual income commission of $1,920.52. Each of these commissions was computed in accordance with New York statutory law, N.Y. Civ. Prac. Law sec. 8005 (McKinney 1963), and N.Y. Surr. Ct. Pro. Law sec. 2308 (McKinney 1967), and deducted in toto by petitioner on his 1969 tax return.

It is well established that section 212 of the Internal Revenue Code of 1954 [1] permits the deduction of a fiduciary's commissions to the extent that they are incurred or paid for the production of income or for the management, conservation, or maintenance of trust assets. Sec. 1.212–1(i), Income Tax Regs. Such an expense is deductible in the year paid even though it is incurred for the production of income which will or may be realized in a subsequent year. Secs. 1.212–1(b) and 1.212–1 (a)(1), Income Tax Regs.

However, section 265(1) limits the deductibility of expenses otherwise allowable under section 212 to those incurred in whole or in part for the production of taxable income. Setting forth in general terms this limitation on deductibility, section 1.265–1(c), Income Tax Regs., provides: "If an expense or amount otherwise allowable is indirectly allocable to both a class of nonexempt income and a class of exempt income, a reasonable proportion thereof determined in the light of all the facts and circumstances in each case shall be allocated to each."

In computing a deficiency in petitioner's 1969 income tax, respondent allocated a portion of the annual principal and the annual income commissions to tax-exempt income in the ratio of exempt ordinary income to total ordinary income realized during 1969. Consequently 36.49 percent [2] of those commissions was disallowed as a deduction. In apportioning the termination fee, respondent allocated it pro rata among all items of tax-exempt and taxable income realized over the life of the trust, including net capital gains, thereby arriving at a nondeductible percentage of 28.57. [3]

Petitioner concedes in his brief that the annual income commission was correctly allocated by the respondent, but he objects to the basis on which the other two commissions were allocated. According to him, the termination fee and the annual principal commission are assignable to exempt income in a ratio where the numerator is exempt ordinary income received over the life of the trust and the denominator is the sum of: (1) Total ordinary income received over the life of the trust; (2) net capital gains realized over the same period; and (3) appreciation in the value of the trust's corpus as of the trust's termination date that would have been taxable as capital gain if it had been

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

[2] $\frac{\$\ 9,028}{\$24,743} = 36.49$ percent

[3] $\frac{\$211,448}{\$740,093} = 28.57$ percent

realized. On that basis, the nondeductible percentage would be reduced to 9.54.[4]

Alternatively, petitioner proposes a nondeductible fraction identical to his primary suggestion, outlined above, except that the numerator would be reduced by the net capital loss incurred on sales and dispositions of municipal bonds during the life of the trust. This alternative proposition requires only brief comment because it obviously would produce a result incongruous with the statute. The statutory objective is to allocate indirect expenses between tax-exempt and taxable income, which is not the same as an allocation between income associated with municipal bonds and income not associated with municipal bonds. The difference lies in the fact that gains and losses from capital transactions involving municipal bonds are generally subject to tax, *Willcuts* v. *Bunn*, 282 U.S. 216 (1931), while interest income from municipal bonds is typically tax-exempt.

The trust assets had a fair market value at termination of $2,516,-010.27, of which $1,476,023 represented unrealized appreciation. The crux of petitioner's principal proposal is that unrealized appreciation affected the computation of both the termination fee [5] and the annual principal commission,[6] and so the $1,476,023 should be included in the denominator of the nondeductible fraction in order to obtain a reasonable disallowance as required by section 1.265–1(c), Income Tax Regs.

Before turning our attention to what is a reasonable allocation under section 1.265–1(c), Income Tax Regs., it is essential to consider the complete statutory picture. Section 265 is a general provision applicable to all taxpayers, whereas subchapter J specifically deals with the taxation of trusts and beneficiaries. *Marcia Brady Tucker*, 38 T.C. 955, 956 (1962), affd. 322 F. 2d 86 (C.A. 2, 1963). When the income taxes of a trust are involved, the concept of "distributable net income" (hereinafter DNI), as well as the special method of taxation in subchapter J, are important components of all the facts and circumstances. *Manufacturers Hanover Trust Co.* v. *United States*, 312 F. 2d 785, 795 (Ct. Cl. 1963), certiorari denied 375 U.S. 880 (1963).

Although the terms of this trust were not disclosed in the record, all trusts are complex trusts in the year in which they terminate and distribute corpus. Therefore the trust at hand is a complex trust, and the provisions of subpart C of subchapter J are applicable to its bene-

---

[4] $\frac{\$ 211,443}{\$2,216,116} = 9.54$ percent

[5] $18,401.12 of the termination fee was expressly attributable to the "capital increase of assets distributed."

[6] The annual principal commission was based on the market value of the trust assets, which overall was greater than their cost.

ficiaries. Section 662(b) provides that: "items of deduction entering into the computation of distributable net income * * * shall be allocated among the items of distributable net income in accordance with regulations."

With respect to the rules for allocating items of deduction, section 1.661(b)–2, Income Tax Regs., refers to section 1.652(b)–3, Income Tax Regs., which in turn specifies: "(a) All deductible items directly attributable to one class of income * * * are allocated thereto. * * * (b) The deductions which are not directly attributable to a specific class of income may be allocated to any item of income (including capital gains) included in computing distributable net income, but a portion must be allocated to nontaxable income * * * pursuant to section 265 and the regulations thereunder."

The interplay between regulations 1.652(b)–3(b) and 1.265–1(c), which neither petitioner nor respondent addresses, has been considered in previous cases. In *Tucker* the trust realized, during the taxable year, capital gains which were added to corpus and other classes of income, including tax-exempt interest, which were distributable to the taxpayer. The trust paid expenses of an indirect, general nature, and the taxpayer argued that these expenses should be allocated among all items of income, including capital gains. We held that since capital gains augmented principal under the trust terms, they were not encompassed within DNI, and consequently no portion of the general expenses at issue were allocable to them. Because the regulations under section 652 specifically apply to trusts, we concluded that they take precedence over the general provision of section 1.265–1(c), Income Tax Regs. *Marcia Brady Tucker, supra* at 956.

In another case involving the allocation of a trust's indirect expenses in a nontermination year, the Court of Claims reached a result consonant with *Tucker* in *Manufacturers Hanover Trust Co.* v. *United States, supra.* The plaintiff there had urged unsuccessfully that using the artificial concept of DNI, as a basis for allocating general administrative expenses, would be unreasonable because it would arbitrarily ignore sizable amounts of realized capital gains [7] but at least in the circumstances before it—where the deductible expenses did not exceed the DNI—the court held that indirect expenses should be allocated on a distribution base which only included items of DNI.

Because it involved a termination fee in excess of that year's DNI, the situation presented in *Whittemore* v. *United States*, 257 F. Supp. 1008 (E.D. Mo. 1966), reversed and remanded 383 F. 2d 824 (C.A. 8, 1967), is factually more similar to the termination commission

---

[7] Capital gains are excluded from DNI to the extent that they are allocated to corpus and are not paid, credited, or required to be distributed to a beneficiary during the year. Sec. 643(a)(3).

issue than either *Tucker* or *Manufacturers Hanover*. However, neither the District Court nor the Court of Appeals in *Whittemore* mentioned subchapter J and the requirement in the regulations that trust deductions, such as trustee commissions, be allocated only among items of DNI. Instead, the Eighth Circuit in *Whittemore* held that the termination fee was nondeductible in the ratio of nontaxable to taxable income (including capital gains) realized over the life of the trust. The ratio decidendi was that such an allocation was reasonable in the circumstances. 383 F. 2d at 826. Because notions of reasonableness are amorphous, the court's reasoning has been invoked by both parties in the present controversy in support of different allocation formulas.

Although the court in *Whittemore* did not explicitly mention unrealized appreciation, language in the opinion has been construed by the petitioner as implying that unrealized appreciation is a pertinent consideration in making a reasonable allocation: "to the extent that municipals are held for the production of taxable income, a portion of the expense must be allowed." 383 F. 2d at 834.

If there be any inconsistency between *Whittemore* and our decision in *Tucker*, we need not resolve it here. Assuming arguendo that 1.652(b)–3(b)' controls the apportionment of the expenses in this case, respondent's allocation formula—to the extent it included realized capital gains not encompassed within DNI—was clearly fair to petitioner. But subchapter J aside, it is apparent to us that respondent's allocations in this case are sustainable under section 265.

There is a quantum jump, which petitioner insists we make, between the allocation fraction adopted in *Whittemore* (which included realized capital gains in its denominator) and petitioner's fraction (which includes both realized and unrealized capital gains). We decline to make the leap.

In recognition of the vagaries of the securities market and the ephemeral nature of "paper" gains, we hold that respondent's allocation fraction, whose denominator included net capital gains realized over the life of the trust, was eminently fair and reasonable under the facts and circumstances of this case. Sec. 1.265–1(c), Income Tax Regs. Certainly petitioner's evidence fails to convince us that the inclusion of prospective gains and losses would result in a more reasonable apportionment. The inclusion of unrealized capital losses would be detrimental to the petitioner and the inclusion of unrealized capital gains would be beneficial to him, but in either event, a speculative and unwarranted element would be injected into the allocation process.

For these reasons, unrealized appreciation should not be considered in the allocation of either the termination commission or the annual principal commission.

*Decision will be entered under Rule 155.*