## ROBERTS v. UNITED STATES.

### Nos. 48811, 48812.

United States Court of Claims.

Jan. 3, 1950.

Huston Thompson, Washington, D. C., Oscar P. Mast, Washington, D. C., on the brief, for plaintiff.

John A. Rees, Theron Lamar Caudle, Asst. Atty. Gen., Andrew D. Sharpe, Washington, D. C., on the brief, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN, and HOWELL, Judges.

LITTLETON, Judge.

These suits are for the recovery of alleged overpayments of income tax for 1943.

Benjamin Quapaw, deceased, was a citizen of the United States; a full-blood restricted Quapaw Indian; a resident of Ottawa County, Oklahoma, at the time of his death on May 26, 1926. He was then seized and possessed of (a) three restricted allotments of Quapaw tribal lands, (b) certain mineral leases thereon yielding a 10% royalty, (c) certain lots in Baxter Springs, Kansas, which had been purchased with funds received as royalties from such mineral leases, (d) a tract of land and farm in Ottawa County, Oklahoma, also purchased with royalty funds, (e) farm machinery and equipment, farm animals, automobiles, household furniture and fixtures, (f) $347,-876.78 in cash, (g) $74,200 in Liberty Bonds, and (h) $10,000 in United States Treasury Certificates. All of the above-

described property was fully restricted and could not be sold, alienated, hypothecated or otherwise disposed of without the approval of the Secretary of the Interior. Benjamin Quapaw left a will executed October 28, 1924, devising and bequeathing all of his property and estate to his wife, Agnes, and his daughter Jean Anne, in equal shares. Such will was approved "so far as it relates to property under control of the United States" by the Assistant Secretary of the Interior on March 14, 1927.

As shown in finding 6, certain litigation arose in the U. S. District Court for the Northern District of Oklahoma, in which two suits were filed against Agnes and Jean Anne Hoffman and others. The first suit involved a claim by one Lilia Quapaw Hanson for an undivided one-half interest in the estate on the ground that she was the daughter of Benjamin Quapaw by a former lawful marriage. This suit questioned the validity of the will and also the validity of the marriage of the decedent to Agnes Quapaw Hoffman. This suit was finally dismissed on the merits, after the first decision of the District Court had been reversed on appeal, Hanson v. Hoffman, 10 Cir., 113 F.2d 780, and judgment was entered for the defendants. After the termination of this suit in 1942, another suit was brought by one Stella White against Agnes and Jean Anne Hoffman and others, in which she claimed that she was entitled to share in the estate as a lineal descendant of Benjamin Quapaw by his first marriage. This suit questioned the validity of the will. This suit also resulted in a judgment in favor of the defendants.

In the defense of these two suits Agnes and Jean Anne Hoffman, with the approval of the Secretary of the Interior, employed attorneys to defend their interests under the will and in the estate of Benjamin Quapaw.

The litigation expenses and attorney's fees paid in the first suit by Agnes and Jean Anne Hoffman during 1942 and such fees and expenses paid by Agnes Hoffman in 1943 in connection with the second suit, from their restrictive funds, were approved by the Secretary of the Interior, both as to the necessity therefor and the reasonableness of the amounts.

The amount paid in 1942 by Agnes Hoffman, on account of such fees and expenses in the first suit, was $30,050.95, and the amount paid by Jean Anne Hoffman in 1942, as her share of such fees and expenses, was $42,550.64. Agnes Hoffman had, prior to 1942, paid $12,599.68 on account of such fees and expenses. In connection with the second suit, Agnes Hoffman paid fees and expenses in the amount of $32,732.22 during 1943. No payment was made by Jean Anne during 1943, on account of such fees and expenses.

During 1943 and 1944 H. A. Andrews, then Superintendent of the Quapaw Indian Agency, who had charge of the books and accounts of the Indians, prepared and filed separate federal income tax returns for Agnes Quapaw Hoffman and Jean Anne Quapaw Hoffman. In the 1942 and 1943 returns for Agnes Hoffman he claimed the amounts of $30,050.95 and $32,732.22, respectively, paid by or for her, as above stated, as deductions from gross income under section 23(a) (2) of the Internal Revenue Code, 26 U.S.C.A. § 23 (a) (2), first enacted as section 121 of the Revenue Act of 1942, 56 Stat. 798. In the 1942 return for Jean Anne Hoffman a similar deduction was claimed for the amount of $42,550.64 paid by or for her in that year. These returns were prepared on the cash receipts and disbursements basis.

Section 23(a) (2) of the Internal Revenue Code, under which plaintiff claims the right to deduct the expenditures here in question, provides that in computing net income there shall be allowed as deductions, "In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income."

Treasury Regulations 111, section 29.23 (a)-15, promulgated under authority of the

Internal Revenue Code, provides, so far as here material, as follows:

"Expenses, to be deductible under section 23(a) (2), must be 'ordinary and necessary,' which presupposes that they must be reasonable in amount and must bear a reasonable and proximate relation to the production or collection of taxable income or to the management, conservation, or maintenance of property held for the production of income.

"(b) Except for the requirement of being incurred in connection with a trade or business, a deduction under this section is subject to all the restrictions and limitations that apply in the case of the deduction under section 23(a) (1) (A) of an expense paid or incurred in carrying on any trade or business. * * *"

Expenditures incurred in defending or perfecting title to property, in recovering property (other than investment property and amounts of income which, if and when recovered, must be included in income), or in developing or improving property, constitute a part of the cost of the property and are not deductible expenses. Attorneys' fees paid in a suit to quiet title to lands are not deductible; but if the suit is also to collect accrued rents thereon, that portion of such fees is deductible which is properly allocable to the services rendered in collecting such rents. Expenditures incurred in protecting or asserting one's rights to property of a decedent as heir or legatee, or as beneficiary under a testamentary trust, are not deductible expenses. * * *"

The courts have long recognized that amounts expended to protect title to property are not deductible from gross income, and the basis of such holding is that such expenditures are of a capital nature to protect a capital investment and should be treated as a part of the cost of property. Higgins v. Commissioner, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783; Vernor v. United States, 23 F.Supp. 532, 87 Ct.Cl. 435, 438–539; 4 Mertens, Law of Federal Taxation, Sec. 25.19, p. 344. In our opinion the provisions of section 23(a) (2) have not changed this general rule

and the regulations above quoted must be sustained. Porter Royalty Pool v. Commissioner, 6 Cir., 165 F.2d 933, 936; Bowers v. Lumpkin, 4 Cir., 140 F.2d 927, 928, 151 A.L.R. 1336; McDonald v. Commissioner, 323 U.S. 57, 61–62, 65 S.Ct. 96, 89 L.Ed. 68, 155 A.L.R. 119; Coughlin v. Commissioner, 3 T.C. 420; Addison v. Commissioner, 8 Cir., 1949, 177 F.2d 521.

The plaintiff argues, however, that the statutory provision for the deduction of expenditures for the conservation of property should be more liberally construed in favor of restricted Indians because the "Indian has no power or exercise of control over the allotted property or any property that flows from allotments; that the Indian virtually has only the right of occupancy of the land and cannot dispose of the land or the funds derived therefrom. He has no control over the moneys or royalties coming into the Department from the leasing of the land."

In our opinion the restrictions imposed by law upon Indians, which preclude them, without the approval of the Secretary of the Interior, from disposing of their property, cannot be construed, for the purpose of applying the income tax statutes, as placing the Indians in a more favorable position than other taxpayers with reference to deductions from gross income. The restrictions on the right of sale or disposition by Indians of their property were imposed by Congress in their interest and for their protection. No claim is or can be made that these restrictions were arbitrarily imposed. Their property is, in effect, held in trust by the Government to be managed and controlled by the Secretary of the Interior for their use and benefit and, under the taxing statutes, the Indians, as the beneficial owners of such property, have the same rights to the benefits resulting from capital expenditures that any beneficiary under an ordinary trust would have. The United States, as the guardian of restricted Indians, has designated the Secretary of the Interior to act for it in the management, control and conservation of their properties, and if and when the guardian

deems it to be in the best interest of the Indians to sell or dispose of their property or some part of it and reinvest the proceeds for their benefit, the Indians will obtain the same benefit that any white or unrestricted taxpayer could obtain from similar capital expenditures.

We hold, therefore, that the restrictions imposed by Congress upon the right of Indians to sell or dispose of their property are not sufficient to warrant the allowances, as deductions from gross income, of the expenditures here involved.

Defendant says that even if the expenditures in question were deductible, the payment of $42,550.64 made by Jean Anne Quapaw Hoffman in 1942, was not an "ordinary and necessary expense" because no specific relief was sought against her in the suit by Lilia Quapaw Hanson and, also, because the sum was paid by Jean Anne to reimburse her mother, in part, for expenses in the total sum of $85,201.27 previously paid by her. We think this contention is not well taken, and if the sums expended were deductible we would allow as a deduction the amount claimed. The sum paid by Jean Anne was, however, like that paid by Agnes, a capital expenditure. The suit by Lilia Hanson questioned the validity of the will under which Jean Anne received one-half of the estate of Benjamin Quapaw, and if that claim had been sustained the interest of Jean Anne in the estate might have turned out to be much less than one-half thereof. On the record we must hold that the Secretary of the Interior, after due consideration, determined that the payment made by Jean Anne was necessary and that he approved the amount paid as reasonable. The facts do not warrant the conclusion that such payment was either unnecessary or unreasonable in amount. The fact that Agnes, the mother, first paid the total fees and expenses and was reimbursed by Jean Anne for almost exactly one-half thereof does not, in our opinion, have any important bearing upon the right of Jean Anne to claim whatever benefit she may be entitled to under the Internal Revenue statute on account of such payment.

Plaintiff is not entitled to recover, and the petitions are dismissed. It is so ordered.