Augustus J. FABENS,
Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent-Appellee.

No. 75–1057.

United States Court of Appeals,
First Circuit.

Argued May 5, 1975.

Decided June 30, 1975.

James Sawyer, Great Neck, N. Y., with whom Charles R. Van De Walle, Great Neck, N. Y., was on brief, for appellant.

Arthur L. Bailey, Atty., Tax Div., Dept. of Justice, with whom Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, and Jonathan S. Cohen, Attys., Tax Div., Dept. of Justice, Washington, D. C., on brief, for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

The parties stipulated that from 1953 to 1969 taxpayer Fabens maintained in a trust account municipal bonds, the in-

come from which was tax-exempt, and other securities the income from which was taxable. The trust also realized capital gains and losses from transactions involving its holdings. Upon termination the fair market value of the trust assets included a considerable amount of unrealized capital appreciation[1] which was reflected in the fiduciary fees paid on termination and computed under local law as a percentage of current market value. Taxpayer deducted the full amount of these commissions as expenses for the production of income under Int.Rev.Code § 212.[2] The Commissioner disallowed a portion of this deduction pursuant to Int.Rev.Code § 265(1) prohibiting the deduction of expenses directly or indirectly allocable to the production of tax-exempt income. The fees were disallowed in the ratio of tax-exempt income over the life of the trust to total income (including net capital gains) realized during that period.[3]

1. The stipulation as to these amounts is summarized in the following table:

| | Applicable to municipal bond holdings | Applicable to non-municipal bond holdings | Total |
|---|---|---|---|
| *Income* due to dividends and interest realized over the life of the trust, 4/9/53–6/16/69 | $211,443 | $ 503,641 | $ 715,084 |
| *Capital* gain income realized over the life of the trust as a result of sales, liquidations, distributions or uncollectibility of principal, 4/9/53–6/16/69 | ($127,340) | $ 152,349 | $ 25,009 |
| *Unrealized appreciation* during period 4/9/53–6/16/69 | —0— | $1,476,023 | $1,476,023 |
| *Ordinary* income realized by the trust for the calendar year 1969 | $ 9,028 | $ 15,715 | $ 24,743 |

2. Upon termination of the trust on June 16, 1969, taxpayer paid trustee the following fiduciary commissions:
A. Receiving and Paying Commissions:
  (a) Receiving Commissions:
    (i) Receiving commission based on capital appreciation of assets sold, redeemed and collected ...............$ 717.31
    (ii) Receiving commission based on capital increase of assets distributed .... 18,401.12

                                  $19,118.43

  (b) Paying Commissions:
    (i) Paying commission based on market value at date of distribution, administrative expenses and assets remaining on hand ............................... 31,576.30

      TOTAL Receiving and Paying Commissions: ...... $50,694.73
B. Trustee's annual principal commission (based on the then current market value of the fund) ...................... 1,279.42
C. Trustee's annual income commission (based on income collected for period 5/3/68–6/1/69) ...................... 1,920.52

    TOTAL fiduciary commissions due and paid Bankers Trust Company upon termination of Trust Agreement in June 1969 .......................................... $53,894.67

---

3. In allocating a portion of these expenses to the tax-exempt income, the Commissioner first determined the total amount of tax-exempt income earned by the trust between 1953 and 1969 ($211,443), and then computed the total income of the

In the Tax Court taxpayer argued that this formula was not reasonable in the light of all the facts and circumstances, Treas.Reg. § 1.265–1(c), because it did not reflect the unrealized appreciation of the trust assets. The court upheld the Commissioner's allocation and taxpayer appeals.

The Commissioner argues there was no evidence that the trust assets were actually managed for capital appreciation; and that to the extent they were so managed, the Commissioner's inclusion in his allocation formula of net capital gains realized over the life of the trust would reasonably reflect this fact. We disagree on both counts. As an initial matter even if achieving appreciation were not a prime goal of the trustee's management, it would remain unclear how fees created solely because of a rise in the value of taxable investments could be considered "allocable" within the statute to the production of tax exempt income. At any rate, while there is no specific evidence as to the trustee's investment objectives, that appreciation was such an objective is inferable from the facts that the trustee apparently insisted on compensation for appreciation when the trust was established, and that appreciation under the trustee's management comprised more than half of the corpus value at termination. As to the second point, since the trustee's decision to sell securities (thereby realizing capital appreciation) is dictated by considerations other than that of the trust's termination date, there is no necessary reason to suppose that the net capital gains realized over the life of the trust and included in the Commissioner's formula will fairly reflect the trustee's division of labor between exempt and taxable income-production activities in administering the trust.[4] Since the value of the property comprising corpus generates the fee, an allocation measure like taxpayer's which somehow reflects that value will seemingly result in a fairer apportionment.[5] See M. Ferguson, J. Freeland & R. Stephens, Federal Income Taxation of Estates and Beneficiaries 492–93, 644 n. 115 (1970). The Tax Court characterized the appreciation as "ephemeral," but the commissions it produced represented an outlay very tangible indeed.

trust for this period ($740,093), which included taxable interest and dividends and capital gains, plus the tax-exempt income. Tax-exempt income was then expressed as a percentage of total income $\left( \dfrac{\$740,093}{\$211,443} = 28.57 \text{ percent} \right)$, and this percentage was applied to the total amount of receiving and paying commissions incurred upon termination of the trust ($50,695) to determine the amount of the termination commissions ($14,484) allocable to tax-exempt income. The Commissioner made a separate allocation with respect to the annual commissions (income and principal commissions) for 1969 in the total amount of $3,241. The Commissioner allocated this commission by computing the total income (taxable and tax exempt) of the trust for 1969 ($24,743), and computing tax-exempt income for 1969 ($9,028), as a percentage of total income $\left( \dfrac{\$9,028}{\$24,743} = 36.49 \text{ percent} \right)$. The percentage was applied to the total annual commissions ($3,241) for 1969 to determine the amount ($1,183) allocable to tax-exempt income for that year. The total amount ($15,667) allocable to tax-exempt income ($14,484 of the termination charges, plus $1,183 of the annual commissions) was disallowed as a deduction pursuant to the provisions of Section 265 of the Code. The Commissioner allowed the remaining amounts ($38,269) as deductions for 1969.

4. Here the unrealized appreciation exceeded the net capital gain included in the Commissioner's ratio by a factor of 60. It is not wholly unrealistic to conceive of a trust owning common stock, which experiences enormous appreciation during the trust's existence while paying little or nothing in dividends as growth stocks often do, along with a single municipal bond paying a steady coupon interest. In such a situation the Commissioner's formula would obviously result in a distorted apportionment of termination fees paid for the whole job of administering the trust. *See In re Gildersleeve's Estate,* 75 Misc.2d 207, 347 N.Y.S.2d 96 (Sur.Ct.1973).

5. This may be a special "fact and circumstance" to be considered in making the allocation under Treas.Reg. § 1.265–1(c). M. Ferguson, J. Freeland & R. Stephens, Federal Income Taxation of Estates and Beneficiaries 493 (1970).

It is clear as a general matter that expenditures aimed at the production of future capital gains are deductible under Treas.Reg. § 1.212–1(b). It is also clear as a general matter that in the application of § 265, an allocation based on realized income is not mandatory, Rev.Rul. 63–27, and this was true as regards trustees' fees too, at least under the 1939 Code. *Edward Mallinckrodt, Jr.,* 2 T.C. 1128, 1148 (1943). The Commissioner argues, however, that where a trust is involved, the concept of distributable net income, *see* Int.Rev.Code § 643(a), and the special system of taxation in subchapter J (dealing with trusts and estates) are important components of "all the facts and circumstances" mentioned in Treas.Reg. § 1.265–1(c). *Manufacturers Hanover Trust Co. v. United States,* 312 F.2d 785, 795, 160 Ct.Cl. 582 (1963). Trusts are taxable entities which compute their deductions basically as do individuals, though in order to effectuate the "flow-through" scheme of taxation of subchapter J they are allowed a special deduction for distributions to beneficiaries. Int.Rev.Code § 641(b); Treas.Reg. § 1.641(b)–1. This distribution deduction is limited by distributable net income, Int.Rev.Code § 661(a). The statute contemplates that items of deduction like fiduciary fees be allocated exclusively among items of distributable net income. Int.Rev.Code § 661(b); Treas.Reg. § 1.652(b)–3(b). Thus, in *Manufacturers Hanover Trust v. United States, supra,* and *Tucker v. Commissioner,* 322 F.2d 86 (2d Cir. 1963), the courts upheld the Commissioner's excluding from the allocation base realized capital gains allocable to corpus not required to be distributed in the current year, hence excluded from distributable net income. Int.Rev.Code § 643(a)(3).

Since capital appreciation is never included in distributable net income, the Commissioner contends, it may never be included in the base for allocating commissions between exempt and taxable income.

The Commissioner himself acknowledges that the allocation of termination fees like those involved here may not be subject to the strictures of the distributable net income concept, conceding that the deductions may instead pass to beneficiaries under the general allocation provisions and the excess deduction provisions of § 642(h)(2). We think this is in fact the case. Distributable net income is an annual concept. Int.Rev.Code § 643(a). *Manufacturers Hanover Trust* and *Tucker* involved annual commissions and income beneficiaries.[6] Since income beneficiaries would not be taxed for capital gains (which were allocated to corpus under the trust instrument), the Court of Claims saw no reason to give them the added advantage of a deduction for expenses which would be inflated if it included fees based on such gains—gains which would eventually be a tax burden to another (the remainderman). 312 F.2d at 796. In the present case taxpayer will receive the benefit of the appreciation if anyone does. There is no authority in the Code for computing, as the Commissioner in effect wishes, a second, analogous distributable net income based on figures from the entire duration of the trust. Thus the court in *Whittemore v. United States,* 383 F.2d 824 (8th Cir. 1967), facing the identical issue as we are, seemingly did not feel constrained by Treas.Reg. § 1.652(b)–3 in applying § 642(h)(2).[7]

In sum, we agree that the Commissioner's allocation was proper as

---

6. The court in *Manufacturers Hanover Trust* twice noted, 312 F.2d at 794, 796 & nn. 13, 15, that the case would "present different problems" if the allowable deductions exceeded distributable net income as the Tax Court found was the case here.

7. Though the allocation fashioned by the court in that case was the one adopted by the Commissioner here, the possibility of considering

capital appreciation was not before the court there. The problem it perceived in allocating on the basis of corpus value—that part of the value of the exempt securities represented appreciation which would be taxable when realized even though the income from these securities was not—is absent here where the exempt securities actually depreciated.

**1314**

to the annual fees [8] but conclude it was not reasonable in light of all the facts and circumstances, including taxpayer's proposed allocation, insofar as the termination fees were concerned.

*Affirmed in part and reversed in part. Remanded for further proceedings consistent with this opinion.*

8. The Commissioner totalled these commissions at $3,241. Our addition, indicates that the total should be $3,200 ($1,279.42 + $1,920.52).